UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

IVOCLAR VIVADENT, INC.,

                         Plaintiff,

v.                                               Index No.: 19-CV-00394-EAW

EMILY SEXTON and THE ARGEN
CORPORATION, INC.,

                         Defendant.
_____

**DECLARATION OF JOHN STACK IN FURTHER SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

        JOHN STACK, under penalty of perjury and pursuant to 28 U.S.C. § 1746, declares that the following is true and correct:

        1.     I am the Vice President of Dealer Sales and Specialty Markets for Ivoclar Vivadent, Inc. ("Ivoclar"). I submit this declaration to set forth additional facts related to the activities of defendant Emily Sexton in the weeks prior to her departure from Ivoclar.

        2.     As a result of Ivoclar's concern that Ms. Sexton may have violated company policy and misappropriated company information, Ivoclar has been conducting an internal investigation into her activities during the months prior to her departure on January 31, 2019.

        3.     As part of its investigation, Ivoclar conducted searches on Ms. Sexton's Ivoclar email account. That investigation was ongoing at the time that Ivoclar commenced this lawsuit and filed its request for injunctive relief.

- 2 -

4.  Yesterday, Ivoclar uncovered additional information regarding Ms. Sexton's conduct in the weeks leading up to her resignation.

5.  On December 22, 2018 at 6:44 PM, Ms. Sexton forwarded Ivoclar's updated pricing information from her Ivoclar email account to her personal gmail account. The pricing information includes Ivoclar's 2019 price changes for Ivoclar's technical product line. Also attached to Ms. Sexton's email is a list of Ivoclar's top 500 technical customers nationwide, with contact information for each customer. This highly confidential customer list is not limited to Ms. Sexton's territory. I have attached a redacted version of Ms. Sexton's December 22, 2018 email, without the confidential attachments, as **Exhibit A**.

6.  On December 28, 2018 at 11:26 AM, Ms. Sexton forwarded an account list from her Ivoclar email account to her personal gmail account. The account list includes Ivoclar's customer names, contact information for each customer, and the customer's physical and email addresses. The account list further includes Ivoclar's "classification" for each customer, which is an internal Ivoclar ranking based on customer size and sales volume. It also includes information identifying Ivoclar's "last visit" with the customer and which Ivoclar employee conducted the visit. The account list was generated from Ivoclar's password-protected customer relations management software (SAP) system. I have attached Ms. Sexton's December 28, 2018 email, without the confidential attachment, as **Exhibit B**.

7.  A few minutes later, on December 28, 2018 at 11:29 AM, Ms. Sexton forwarded a similar Ivoclar account list from her Ivoclar email account to her personal gmail account. The account list also includes all the same information as the earlier report (Exhibit B),

- 3 -

except that the later account list was generated to include the customer's email account information. I have attached Ms. Sexton's December 28, 2018 email, without the confidential attachment, as **Exhibit C**.

8. On November 5, 2018 at 2:08 PM, Ms. Sexton forwarded a report entitled "Jan-Oct 2018 customer details" from her Ivoclar email account to her personal gmail account. This report contains confidential customer information, including detailed sales information broken down by product type. The report was generated from Ivoclar's password-protected SAP system. I have attached Ms. Sexton's November 5, 2018 email, without the confidential attachment, as **Exhibit D**.

9. There was no legitimate business purpose for Ms. Sexton to forward any of this Ivoclar information, and particularly highly confidential customer reports, to her personal email account.

Dated: April 2, 2019

*[signature]* 4/2/19
John Stack